UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| OLMEDO R. LEON,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>THE HAYWARD BUILDING DEPARTMENT, et al.,<br><br>　　　　　Defendants. | Case No. 17-cv-02720-LB<br><br>**ORDER DISMISSING CASE**<br><br>Re: ECF No. 9 |

## INTRODUCTION

Plaintiff Omeldo Leon claims that the defendants — the City of Hayward and the Hayward Building Department — misused city zoning ordinances to harass and discriminate against him, and so deprived him of his constitutional rights.[1] The defendants have moved to dismiss his complaint.[2] All parties have consented to magistrate jurisdiction.[3] This motion can be decided without oral argument. *See* Civil L.R. 7-1(b). The court concludes that the plaintiff states no viable federal claim. The court therefore lacks subject-matter jurisdiction of this case. The complaint is dismissed, with leave to amend, as more fully described below.

---

[1] Compl. – ECF No. 1. Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] ECF No. 9.

[3] ECF Nos. 4, 14.

ORDER – No. 17-cv-02720-LB

**STATEMENT**

This dispute stems from zoning violations. And, more exactly, from zoning fines that the Hayward Building Department charged Mr. Leon for violations located principally in his garage. Mr. Leon claims that these violations existed when he bought his house. He claims that he "tried to submit plans to proceed" with work that would "legaliz[e] the unpermitted work in the garage," but that "he was unable to do so."[4] The only permit the Department issued him, at his "great cost and expense," was a "permit to demolish" the infracting structure.[5] Mr. Leon also claims that he asked the Department about a California state law (which he identifies as "an amendment to the State Zoning Code, SB-1069") that, as he understood things, "invalidated all non-compliant municipal zoning codes, including that of Hayward."[6] The defendants, however, "disregarded" his inquiry.[7] Mr. Leon alleges that the Department levied "a number of very heavy fines" against him.[8] He also claims that he was "told that the amount required to appeal [the zoning decisions] exceeded . . . $800," which he calls "an amount high enough to discourage appeals."[9] He also suggests that he is a Spanish-language speaker, and is "not fully conversant with the English language."[10]

Based on these factual allegations, Mr. Leon brings the following legal claims: (1) through 42 U.S.C. § 1983 for violation of his rights under the Fourteenth Amendment to the U.S. Constitution; (2) through § 1983 for violation of his rights under the Eighth Amendment; (3) under the Fair Housing Act (42 U.S.C. § 3601 *et seq.*); (4) intentional infliction of emotional distress under California law; and (5) negligent infliction of emotional distress under California law.[11] For the reasons below, the court concludes that Mr. Leon does not state a minimally viable federal

---

[4] *Id.* at 5 (¶ 8).
[5] *Id.* at 4 (¶ 7).
[6] *Id.* at 5 (¶ 10).
[7] *Id.*
[8] *Id.* at 5 (¶ 9).
[9] *Id.*
[10] *Id.* at 4 (¶ 2).
[11] *Id.* at 4–7.

claim. The court thus lacks subject-matter jurisdiction of this case. The complaint is dismissed with leave to amend.

**GOVERNING LAW**

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests the legal sufficiency of a complaint. *Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). A claim will normally survive a motion to dismiss if it offers a "short and plain statement . . . showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). This statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a mere possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

When considering a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint as well as all reasonable inferences that may be drawn from such allegations. *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150 n. 2 (9th Cir. 2000). Such allegations must be construed in the light most favorable to the nonmoving party. *Shwarz,* 234 F.3d at 435. While a court construes *pro se* pleadings more "leniently," the court cannot salvage claims that are fatally deficient. *See De la Vega v. Bureau of Diplomatic Sec.*, No. 07-CV-3619-WHA, 2007 WL 2900496, at *1 (N.D. Cal. Oct. 1, 2007). If a court dismisses a complaint, it should give leave to amend unless the "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

### 1. Claim 1 — 42 U.S.C. § 1983 — Eighth Amendment[12]

#### 1.1 The Building Department is not a Proper § 1983 Defendant

The defendants argue that the Building Department is not a proper defendant to a § 1983 claim.[13] The court understands the argument but disagrees. There is no doubt that municipalities themselves are "persons" that can be sued under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 62, 67 n.7 (1989); *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 and n. 54 (1978). Whether their subordinate agencies and departments — such as the Hayward Building Department — are § 1983 "persons" is a question on which district courts have disagreed. There is some authority holding that such agencies are not § 1983 "persons." *Ludavico v. Sacramento Cty.,* 2009 WL 616868, at *2 and n. 5 (E.D. Cal. Mar. 11, 2009) (school-district police department was not § 1983 "person"); *Vance v. Cnty. of Santa Clara*, 928 F. Supp. 993, 995–96 (N.D. Cal. 1996) (dismissing county corrections department as improper § 1983 defendant). But the question is more complicated than the defendants' brief discussion admits. And this court concludes that it is bound by the Ninth Circuit's decision in *Streit v. Cty. of Los Angeles,* 236 F.3d 552 (9th Cir. 2001). The *Streit* court held that the Los Angeles County Sheriff's Department could be separately sued under § 1983. *Id.* at 565. The *Streit* court explained:

> [T]he Police Department's capacity to be sued in federal court is to be determined by the law of California. Section 945 of the California Government Code provides that "[a] public entity may sue or be sued." Section 811.2 of the Government Code defines a "public entity" to include "the State, the Regents of the University of California, a county, city, district, ***public authority, public agency,*** and any other political subdivision or political corporation in the State."

*Id.* (quoting *Shaw v. California Dep't of Alcoholic Beverage Control,* 788 F.2d 600, 604 (9th Cir. 1986)) (emphasis added). The *Streit* court held that the county sheriff's department was a "public entity" and could itself be sued under § 1983. *See id.* (citing *Shaw*, 788 F.2d at 604–05 ("the courts of California would hold that the Police Department is a public entity under section 811.2") and

---

[12] The plaintiff's first claim also poses a Fourteenth Amendment theory under § 1983; the court addresses all Fourteenth Amendment theories in Part 2.2, below.

[13] ECF No. 9 at 4–5.

1   *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 624 n. 2 (9th Cir. 1988) ("Municipal

2   police departments are 'public entities' under California law and, hence, can be sued in federal

3   court for alleged civil rights violations.").

On essentially this reasoning, under the guidance of these Ninth Circuit decisions, this court holds that the Hayward Building Department is a "public authority" or "public agency," hence a "public entity," and is a proper § 1983 defendant. The defendants' motion to dismiss the Department on this ground is denied.

### 1.2 The City is not Liable Under § 1983 — No *Monell* Allegations

The defendants next contend that the first claim must be dismissed insofar as it asserted against the City of Hayward. The only acts alleged in this count, the defendants rightly observe, are those of the Building Department and, more exactly, its employees.[14] The City's liability under this claim would have to be secondary, as it were, derived from the conduct and liability of individual Department employees. The defendants argue that § 1983 does not permit this sort of vicarious municipal liability. Thus, they conclude, to the extent that the § 1983 claim is lodged against the City of Hayward, it must be dismissed.

The defendants are correct. It is by now a rudiment of § 1983 law that municipal defendants cannot be vicariously liable under the statute for the acts of their employees. *E.g., Monell*, 436 U.S. at 691–95. Municipalities like the City can be liable under § 1983 only if an "official municipal policy . . . caused a constitutional tort." *Id.* at 691. To show an actionable municipal policy, a *Monell* plaintiff "must satisfy one of three conditions:

> First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official

---

[14] *See* Compl. – ECF No. 1 at 4-5 (¶¶ 6–14).

ORDER – No. 17-cv-02720-LB        5

> with final policy-making authority ratified a subordinate's unconstitutional decision
> or action and the basis for it.

*Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996) (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir. 1992) (citations and internal quotations omitted), *cert. denied,* 510 U.S. 932 (1993)). However proven, though, "[t]he custom must be so 'persistent and widespread' that it constitutes a 'permanent and well settled city policy.'" *Hunter v. Cty. of Sacramento*, 652 F.3d 1225, 1233 (9th Cir. 2011) (quoting *Trevino,* 99 F.3d at 918 ) (quoting in turn *Monell,* 436 U.S. at 691). "[I]solated or sporadic incidents," by contrast, will not support *Monell* liability against a municipality. *Hunter*, 652 F.3d at 1233.

The complaint does not begin to allege the minimal facts that would be needed to support a *Monell* theory. At one end of the spectrum, the complaint does not allege that the Department's supposedly unconstitutional actions were undertaken in pursuit of a "policy" or "custom"; at the spectrum's other end, the complaint does not suggest that any City official reviewed and "ratified" the Department's offending conduct. There is simply nothing in the § 1983 claim that even starts to construct a *Monell* theory of liability against the City.

To the extent that the first claim, under § 1983, is advanced against the City of Hayward, then, that claim is dismissed. The plaintiff may amend this claim under the timeline given at the end of this order.

### 1.3 The Eighth Amendment Claim Fails

This case involves no criminal punishment. The only conceivable Eighth Amendment theory is thus under the amendment's Excessive Fines clause. This clause "limits the government's power to extract payments, whether in cash or in kind, "as punishment for some offense." *Austin v. United States*, 509 U.S. 602, 609–10 (1993) (quoting *Browning–Ferris Indus. of Vermont, Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 265 (1989)) (emphasis removed). This "notion of punishment . . . cuts across the division between the civil and the criminal law." *Id.* at 610 (quoting *United States v. Halper,* 490 U.S. 435, 447–48 (1989)). "The touchstone of the constitutional inquiry under the Excessive Fines Clause," moreover, "is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense that it is designed to punish."

*United States v. Bajakajian*, 524 U.S. 321, 334 (1998). "[A] punitive forfeiture" — which can include a civil penalty — "violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.*; *accord U.S. Secs. & Exch. Comm'n v. Brookstreet Secs. Corp.*, 664 F. App'x 654, 656 (9th Cir. 2016) ("civil penalty").

The plaintiff fails to allege a *prima facie* Excessive Fines claim. Presumably, he has in mind the zoning "fines" that the City allegedly charged him.[15] But he offers nothing that would allow a fact-finder to decide whether these fines were constitutionally excessive. He says only that he was "issued a number of very large fines."[16] He doesn't say how much he was fined. He doesn't say how many times he was fined. (A penalty of $10,000, say, may be an excessive response to one infraction, but may be constitutionally tolerable as an aggregate fine for multiple or persistently uncorrected violations.) He does not claim, or allege facts that suggest, that the fines were disproportionate to the zoning violations. *See Brookstreet Securities*, 664 F. App'x at 656 (one Excessive Fines factor is "nature and extent" of violation). The complaint names only one specific charge; it alleges that the City or Department told him that "the amount required to appeal" the zoning decision "exceeded . . . $800."[17] The plaintiff alleges that this fee "discourage[s]" people from seeking review of zoning decisions.[18] But a filing fee is not a "punishment" within the scope of the Eighth Amendment. And nothing in the complaint suggests that this $800 figure was somehow punishment for an infraction.

The Excessive Fines claim thus fails. Particularly given the leniency with which the court assesses *pro se* litigants' claims, however, the court cannot say that it would be futile for Mr. Leon to amend his Eighth Amendment claim. The court therefore dismisses that claim with leave to amend.

---

[15] *See id.* at 5 (¶ 9).
[16] *Id.*
[17] *Id.*
[18] *Id.*

ORDER – No. 17-cv-02720-LB 7

## 2. Claim 2 — Fair Housing Act and Fourteenth Amendment

### 2.1 The Fair Housing Act Claim Fails

The plaintiff's claim under the Fair Housing Act (42 U.S.C § 3601 *et seq.*) is not viable. This statute outlaws discrimination in the "sale" or "rental" of housing based upon someone's "race, color, religion, sex, familial status, or national origin." *See generally* 42 U.S.C. §§ 3603–04. The plaintiff does not allege that the defendants discriminated against him in the sale or rental of property. Nothing in the complaint remotely suggests that this case has anything to do with the sale or rental of a dwelling. Even under the most lenient reading, the complaint does not suggest that this is in any way a Fair Housing Act case. This claim is dismissed.

### 2.2 Fourteenth Amendment[19]

The Fourteenth Amendment protects individuals against governmental deprivations of property without due process of law. The amendment has both procedural and substantive aspects. *See, e.g., United States v. Salerno,* 481 U.S. 739, 746 (1987).

#### 2.2.1 Procedural Due Process

"To prevail on a claim for a procedural due process violation, the party must prove three elements: 1) a protectible liberty or property interest, 2) government deprivation of that interest, and 3) a denial of adequate procedural protections." *Holman v. City of Warrenton*, 242 F. Supp. 2d 791, 803 (D. Or. 2002) (citing *Foss v. Nat'l Marine Fisheries Serv.,* 161 F.3d 584, 588 (9th Cir. 1998)).

The complaint does not allege a minimally viable procedural-due-process claim. We may safely assume that Mr. Leon has a constitutionally protected property interest in his home. We may also assume, for present purposes, that the zoning regulations to some degree deprived Mr. Leon

---

[19] The plaintiff invokes the Fourteenth Amendment in two places: once in connection with § 1983 (where it is usually seen), and once along with his Fair Housing Act claim. *See* Compl. – ECF No. 1 at 5–6 (¶¶ 10, 19). Both the § 1983 claim and the Fair Housing Act claim rest on the same underlying facts. The court can find no operative distinction between the two references to the Fourteenth Amendment and so deals with them here in one combined analysis.

of that property.[20] Mr. Leon still has not made a *prima facie* showing on the third element of procedural due process. Which is to say, nothing in the complaint begins to suggest that the defendants denied Mr. Leon "adequate procedural protections." In fact, the complaint says nothing about the process lying behind the relevant zoning rules, decisions, or penalties. The complaint does not describe (or even summarily decry) how the defendants adopted the relevant zoning rules. The complaint says nothing about the process by which they determined Mr. Leon's house to be out of compliance with those rules, or in how they set the fines, or about the vehicles that were available to Mr. Leon to challenge the defendants' decisions. There is not the most basic frame on which to hang a *prima facie* procedural-due-process claim. That claim is dismissed with leave to amend.

### 2.2.2 Substantive Due Process

The complaint does not allege a *prima facie* substantive-due-process violation. Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *Salerno,* 481 U.S. at 746 (quoting *Rochin v. California,* 342 U.S. 165, 172 (1952) and *Palko v. Connecticut,* 302 U.S. 319, 325–26 (1937)). The Supreme Court has repeatedly held that that "the substantive component of the Due Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Collins v. Harker Heights,* 503 U.S. 115, 128 (1992)). And "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (quoting *Collins*, 503 U.S. at 128).

This is a high obstacle. The complaint in this case fails to clear it. The court assumes that, in some marginal situations, zoning penalties may be constitutionally arbitrary and conscience-shocking. Still, the allegations of this complaint describe no such situation. Nothing in the present

---

[20] For more on this point, see the "takings" and inverse-condemnation discussion in Part 2.2.3, below.

ORDER – No. 17-cv-02720-LB  9

complaint suggests official conduct that "shocks the conscience" or is "arbitrary in the constitutional sense."

Here, too, the court cannot say that it would be wholly futile for the plaintiff to amend his Fourteenth Amendment claim to allege an actionable substantive-due-process violation. Insofar as the present Fourteenth Amendment claim does allege such a violation, the court dismisses it with leave to amend. Should the plaintiff advance such a claim in the next iteration of his complaint, though, he should do so clearly, and he should keep in mind the rigorous demands of Supreme Court precedent in this area.

### 2.2.3 Takings and Inverse Condemnation

It is possible that Mr. Leon also has in mind a "regulatory taking" or inverse-condemnation claim. The idea would be that the zoning restrictions have so impacted his property as to amount to an unlawful taking of that property. The Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public use without just compensation." U.S. Const. amend. V. It applies to the states through the Due Process Clause of the Fourteenth Amendment. *E.g., Schneider v. California Dep't Of Corrections*, 151 F.3d 1194, 1198 (9th Cir. 1998). The "taking" need not be the classic "appropriation[] or ouster[]" of an eminent-domain proceeding; it can also be a "regulatory taking" — *i.e.* land-use restrictions so burdensome that they effectively deprive the owner of the property's use. *See generally Small Prop. Owners of San Francisco v. City & Cty. of San Francisco*, 141 Cal. App. 4th 1388, 1396–97 (2006) (describing regulatory takings) ("The Takings Clause applies as well to government enactments that, while not direct appropriations or ousters, are equivalent thereto. These enactments have been called regulatory takings . . . .").

The sparseness of the complaint makes it unnecessary, certainly uneconomical, and probably unwise to go too far into this issue. One key point will suffice to show that the present complaint does not state a viable takings claim. The plaintiff does not claim, or factually allege, that the zoning restrictions have stripped his property of "all beneficial economic use"; nor has he made the lesser showing that the zoning rules have had such an "adverse economic impact" that they

amount to the "functional equivalent of a traditional taking." *See Small Property Owners*, 141 Cal. App. 4th at 1396 (citing *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)). Indeed, he has in no way described the "economic impact" of the zoning restrictions. *See id.* (A question that is not wholly reducible to the imposition of fines.) In short, the plaintiff has not begun to make the legal claims, or to advance the underlying factual allegations, that would support a constitutional taking claim.

### 2.2.4 Equal Protection

The complaint also raises a Fourteenth Amendment equal-protection claim. Mr. Leon claims that the defendants "discriminated against [him] solely on the basis of his origin, language or nationality . . . ."[21] Strictly speaking, Mr. Leon does not name his national origin, alienage status, or race. He suggests that his primary language is Spanish when he explains that he "is not fully conversant with the English language" and had to wait "some time" for the defendants to give him a Spanish-language version of the document that listed his zoning violations.[22] In any event, assuming that Mr. Leon does invoke a constitutionally "suspect classification," he fails to state a threshold equal-protection claim.

"To state a § 1983 claim for violation of the Equal Protection Clause," a plaintiff "must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Lee v. City of Los Angeles,* 250 F.3d 668, 686 (9th Cir. 2001) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) *cert. denied*, 525 U.S. 1154 (1999)); *accord Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005). Put slightly differently, a plaintiff alleging that he was denied equal protection based on his race or other suspect classification "must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998); *accord, e.g., Caddell v. Helena Elder Hous., Inc.,* 494

---

[21] Compl. –ECF No. 1 at 6 (¶ 18).

[22] *Id.* at 4 (¶ 2).

1  F. App'x 809, 810 (9th Cir. 2012) ("The district court properly dismissed . . . equal protection

2  claims . . . because [plaintiff] failed to allege facts demonstrating a discriminatory intent.").

3  "[B]are assertions" and "conclusory allegations" of discrimination will not suffice. *See Moss v.

4  U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (discussing *Iqbal*, 556 U.S. at 680–81). Nor

5  will the merely "formulaic recitation of the elements" of a constitutional discrimination claim.

6  *Iqbal*, 556 U.S. at 680–81 (quoting *Twombly,* 550 U.S. at 555).

7  Yet that is all that Mr. Leon offers. He offers no factual allegation suggesting discriminatory

8  intent. He has indeed said so little in this vein, factually, that his allegations are not even fairly

9  "susceptible of an inference of discriminatory intent." *See Monteiro*, 158 F.3d at 1026. All that Mr.

10  Leon does is to summarily state the "formulaic . . . elements" of an equal-protection claim. That

11  will not carry him past a motion to dismiss. *See Moss,* 572 F.3d at 969; *Iqbal*, 556 U.S. at 680–81;

12  *Twombly,* 550 U.S. at 555.

13  Here, too, it is not inconceivable that Mr. Leon could state a viable equal-protection claim. It is

14  clear only that his present complaint does not successfully do so. This aspect of his Fourteenth

15  Amendment claim is therefore dismissed with leave to amend.

### 3. State-Law Claims

18  This is alleged to be a federal-question and supplemental-jurisdiction suit.[23] The parties are all

19  California residents, so diversity jurisdiction is not in question. Yet the plaintiff has not stated a

20  minimally viable federal claim. The court thus lacks federal-question jurisdiction. Without

21  jurisdiction, the court does not reach the plaintiff's state-law claims.

22  \* \* \*

---

28  [23] *Id.* at 2 (¶ 4).

## CONCLUSION

The Complaint is dismissed with leave to amend. Any amended complaint must be filed by August 31, 2017. Failure to file an amended complaint by that date will result in this case being finally dismissed.[24]

This disposes of ECF Nos. 9 and 21.

**IT IS SO ORDERED.**

Dated: July 31, 2017

LAUREL BEELER
United States Magistrate Judge

---

[24] The plaintiff's motion for an extension of his opposition-brief deadline (ECF No. 21) is denied. The court had already extended that deadline and Mr. Leon did not meet it. *See* (ECF No. 18.) The content and deficiencies in the present complaint make it more economical for Mr. Leon to simply amend his complaint to try to state a viable federal claim.